## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**LISA LEDERHOS SWEESY, Trustee**
**And Conservator of the EL DEAN**
**LEDERHOS LIVING TRUST,**

  **Plaintiff,**

**V.**                                                  **Case No. 13-CV-01027 WJ/ACT**

**LAURA GENIEVA DAVALOS, JACKSON**
**NATIONAL LIFE DISTRIBUTORS LLC,**
**SUN LIFE INVESTMENTS, INC, OLD MUTAL**
**FINANCIAL NETWORK SECURITIES, INC**
**a/k/a AMERICOM LIFE AND ANNUITY**
**INSURANCE COMPANY and DOES 1-3,**

  **Defendants.**

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANT SUN LIFE'S MOTION TO DISMISS

**THIS MATTER** comes before the Court upon Defendant Sun Life's Assurance

Company of Canada (U.S.)'s ("Defendant Sun Life") Motion to Dismiss, filed November 7,

2013 **(Doc. No. 11)**. Having considered the parties' briefs and the applicable law, the Court finds

that Defendant Sun Life's motion is well-taken and, therefore, is GRANTED.

### Background

This case involves claims of fraud, elder abuse, unjust enrichment, and breach of

fiduciary duty regarding the relationship between insurance agent Defendant Laura Davalos and

El Dean Lederhos ("Mr. Lederhos").  Mr. Lederhos passed away before the filing of the

Complaint and this action is brought by his daughter, who is the conservator of his trust.  Ms.

Davalos allegedly duped Mr. Lederhos in purchasing a number of annuities from Jackson, Sun

Life, and Old Mutual (*hereinafter* referred to collectively as "Company Defendants").   Ms. Davalos' fraud allegedly caused Mr. Lederhos to lose his entire life savings and forced him to sell his home which he had previously owned outright on a short sale to avoid foreclosure. Plaintiff alleges that Ms. Davalos took advantage of the fact that Mr. Lederhos was elderly and suffering from dementia due to Alzheimer's during the time of these significant financial transactions.  Plaintiff further alleges that Company Defendants were complicit in Ms. Davalos' deception of Mr. Lederhos and failed to supervise her while she acting as an agent of Company Defendants.

Defendant Sun Life brings the instant motion alleging Plaintiff's Complaint should be dismissed for two (2) reasons: 1) Plaintiff failed to file her Complaint within the applicable statute of limitations; and 2) Plaintiff's Complaint fails to state a plausible claim for relief. Accordingly, Defendant Sun Life requests the dismissal of Plaintiff's Complaint.

Discussion

I.      **Legal Standard**

Fed. R. Civ. P. 12(b)(6) allows a defense for "failure to state a claim upon which relief can be granted." In asserting a claim, the claimant must plead "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim challenged by a 12(b)(6) motion to dismiss does not require detailed factual allegations, but must set forth "more than labels and conclusions, and a formulaic recitation of the element of a cause of action will not do." Id. at 555  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the [claimant's] complaint alone is legally sufficient to state a claim for which relief may be granted." Sutton  v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999). A 12(b)(6) motion should not be granted "unless it appears beyond doubt that the [claimant] can

prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46 (1957); see Ash Creek Mining Co. v. Lujan, 969 F.2d 868, 870 (10th Cir.1992). All well-pleaded factual allegations in the complaint are accepted as true, see Ash Creek Mining Co., 969 F.2d at 870, and viewed in the light most favorable to the nonmoving party, see Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

**II.    The Court Will Consider Exhibit B to Defendant Sun Life's Motion, but Exhibit A Cannot be Considered on a Motion to Dismiss and all of the Public Record Exhibits to Plaintiff's Response Shall be Considered**

A 12(b)(6) motion must be converted to a motion for summary judgment if "matters outside the pleading are presented to and not excluded by the court" and "all parties ... [are] given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(b).  The failure to convert a 12(b)(6) motion to one for summary judgment where a court does not exclude outside materials is reversible error unless the dismissal can be justified without considering the outside materials. See Brown v. Zavaras, 63 F.3d 967, 970 (10th Cir.1995). Notwithstanding these general principles, if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.  GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997) (citations omitted).

In its Motion, Defendant Sun Life attached two exhibits: Exhibit A- a letter from Defendant Sun Life to Mr. Lederhos, dated June 30, 2008; and Exhibit B- Mr. Lederhos' Death Certificate noting Mr. Lederhos passed away on July 30, 2009.  Plaintiff did not object to or dispute the authenticity of Mr. Lederhos' death certificate, and Mr. Lederhos' death is a significant date for Plaintiff's case.  Thus, the Court finds Exhibit B is properly before the Court

and July 30, 2009 is the correct date of Mr. Lederhos' death.

Exhibit A is a letter from Defendant Sun Life to Mr. Lederhos purporting to memorialize a telephone call that Mr. Lederhos made in June 2008 to Defendant Sun Life regarding "certain improprieties" on his account. Plaintiff disputes that the letter is central to her claim and she also claims that she never received the letter. Further, although Plaintiff does not affirmatively dispute the authenticity of the letter, she does argue the letter is "unauthenticated." The Court therefore, cannot find that Exhibit A is an indisputably authentic copy of the letter. Additionally, it is not clear that Plaintiff referenced this letter in her Complaint, because the portion of the Complaint which Defendant alleges is a reference to the letter refers to *Plaintiff's* inquires to Defendant Sun Life, not *Mr. Lederhos'* inquires. The Court further notes that the letter, contrary to Defendants' argument, does not conclusively establish that Mr. Lederhos contacted Defendant Sun Life; the letter simply contains Defendant's Sun Life assertion that Mr. Lederhos contacted them about his account. Thus, the Court will not consider Exhibit A in deciding the Motion to Dismiss.

In her Response, Plaintiff attached a number of exhibits relevant to the State of California's investigation into Ms. Davalos' activities. Defendant did not object to Plaintiff's exhibits that were simply public records. Further, the Court may properly consider the facts contained in the public record regarding the investigation into Ms. Davalos' transactions with Mr. Lederhos. See Tal v. Hogan, 453 F.3d 1244, 1265 n. 24 (10th Cir.2006) (citing Grynberg v. Koch Gateway Pipeline Co., 390 F.3d 1276, 1278 n. 1(10th Cir.2004)) ("However, facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment."); Binford v. United States, 436 F.3d 1252, 1256 n. 7 (10th Cir.2006) ("A court may take judicial notice of 'its own files and records, as well as

facts which are a matter of public record.'") (citation omitted).   Accordingly, the Court will consider the facts presented in Plaintiff's public records exhibits to her response.

### III.   Statute of Limitations

*A.   Applicable Statute of Limitations and Date of Discovery*

"A federal court sitting in diversity applies the substantive law of the state where it is located, including the state's statutes of limitations." Burnham v. Humphrey Hospitality Reit Trust, Inc., 403 F.3d 709, 712 (10th Cir.2005).   The court "must also apply the state's tolling rules, as they are an integral part of the several policies served by the statute of limitations." State Farm Mut. Auto. Ins. Co. v. Boellstorff, 540 F.3d 1223, 1228 (10th Cir.2008) (quotations omitted).   All of Plaintiff's claims involve financial torts or a derivative thereof.   Thus, the proper statute of limitations for Plaintiff's claims is set forth in NMSA 1978 § 37-1-4 which provides that tort claims based upon "conversion of personal property" and "fraud" must be brought within four (4) years.

New Mexico courts apply the "discovery rule" theory to determine when the statute of limitations for a particular claim accrues.   See Gerke v. Romero, 2010-NMCA-060, ¶10, 148 N.M. 367, 371, 237 P.3d 111, 115 (collecting cases).   Under the discovery rule, the statute of limitations begins when the plaintiff "acquires knowledge of facts, conditions, or circumstances which would cause a reasonable person to make an inquiry leading to the discovery of the concealed cause of action." Martinez v. Showa Denko, K.K., 1998–NMCA–111, ¶ 24, 125 N.M. 615, 964 P.2d 176 (citation omitted).   "[T]he statute of limitations is not tolled because a claimant does not have knowledge of the full extent of injury, but that the time period begins to run when the claimant has knowledge of sufficient facts to constitute a cause of action." Gerke, 2010-NMCA-060, ¶10.   "The key consideration under the discovery rule is the factual, not the

legal, basis for the cause of action. The action accrues when the plaintiff knows or should know the relevant facts, whether or not the plaintiff also knows that these facts are enough to establish a legal cause of action." Coslett v. Third St. Grocery, 117 N.M. 727, 735, 876 P.2d 656, 664 (Ct.App.1994).

Defendant argues because Plaintiff brings her claims on behalf of Mr. Lederhos' trust, the proper focus is when Mr. Lederhos "discovered" the claim.  Defendant alleges that Plaintiff's Complaint demonstrates that as early as 2008, Mr. Lederhos had knowledge of sufficient facts to constitute a cause of action.   Defendant refers specifically to paragraph 21 of Plaintiff's Complaint which states: "By 2008, as a result of [Company Defendants] selling Lederhos inappropriate investments and their failure to adequately monitor Defendant Davalos' activities, Lederhos had lost his previously fully paid for family home in a short sale to avoid foreclosure and the majority of his savings." See **(Doc. No. 1-1)**, Plaintiff's First Amended Complaint, Exhibit A to Notice of Removal.   Plaintiff brought the instant lawsuit in May 21, 2013, well past the deadline of December 13, 2012 (if Defendant is correct about when the claim accrued). Plaintiff does not explicitly dispute Defendant's argument that the proper standard is Mr. Lederhos' knowledge, but she implicitly disputes this argument by basing her arguments regarding the date of discovery on her own personal knowledge, not her father's knowledge. The Court agrees that Mr. Lederhos' knowledge is the relevant consideration.

Plaintiff is suing in her capacity as the trustee and conservator of her father's trust.  Thus, she was the successor in interest of her father's trust when he became incapacitated, either upon his death or when he was unable to appropriately manage the trust.  The timing and the exact method by which the trust passed from Mr. Lederhos to Plaintiff need not be resolved, because it is clear that at some point the trust passed from Mr. Lederhos to Plaintiff, and at least some of

the claims accrued while Mr. Lederhos was still alive and acting as the trustee.  Plaintiff therefore stands in the shoes of Mr. Lederhos for the purposes of this lawsuit.  See Restatement (Second) of Trusts § 280 (Comment j) ("If the trustee ceases to be trustee and a successor trustee is appointed, the successor trustee can maintain the same actions or suits as could be maintained by the original trustee."); see also NMSA 1978 § 46A-1-103 (defining a trustee "as an original trustee, an additional trustee, a successor trustee and a co-trustee.").  New Mexico courts have held that where a party's right to recovery is based upon "standing in the shoes" of another party, the statute of limitations for the party with the derivate right to recovery begins to run when the first party's claim accrues.  See Health Plus of New Mexico, Inc. v. Harrell, 1998-NMCA-064, 125 N.M. 189, 193, 958 P.2d 1239, 1243 ("The statute of limitations begins to run on a subrogated insurance company's action against the third party tortfeasor when the insured's cause of action arises. This rule exists because a subrogated insurance company is considered to be standing in the shoes of the insured. By standing in the shoes of the insured, the insurance company has the same rights and is subject to the same defenses as the insured.").   Thus, Plaintiff is subject to the same defenses, including the statute of limitations, that would have applied to Mr. Lederhos and his knowledge of the claims against Defendant is imputed to Plaintiff because the cause of action accrued while Mr. Lederhos was still alive and was still the trustee of the trust.

Plaintiff provides no binding precedent which demonstrates that her personal knowledge of the claims is the proper standard.  To the contrary, focusing on Plaintiff's knowledge would go against common sense and public policy as well as the standard New Mexico courts apply when one party "stands in the shoes" of another.  Plaintiff's Complaint involves actions that occurred before Plaintiff was the trustee of the trust while Mr. Lederhos was still alive and acting

as the trustee.  Plaintiff cannot maintain a cause of action based upon injuries that occurred to the trust before she was the trustee and then avoid the statute of limitations because *she* did not have knowledge of these acts. Because the torts accrued when Mr. Lederhos was alive, allowing Plaintiff to extend the statute of limitations would essentially give any successor in interest to a claim a chance to revive an already expired cause of action simply because of a transfer in interest.  This is not a situation where the claims accrued at or after the time of Mr. Lederhos' death; they accrued before his death.  Basing the statute of limitations on Plaintiff's knowledge would essentially ignore the fact that Mr. Lederhos knew about the claims for over a year before he died; it would allow Plaintiff an additional year to file a claim for no reason other than the fact that she replaced her father as the trustee.  Ignoring what Mr. Lederhos knew before the trust was transferred would be tantamount to giving Plaintiff extra time for the statute of limitations.

Based upon the allegation that "[b]y 2008, as a result of [Company Defendants] selling Lederhos inappropriate investments and their failure to adequately monitor Defendant Davalos' activities, Lederhos had lost his previously fully paid for family home in a short sale to avoid foreclosure and the majority of his savings", the Court finds that the cause of action for damage to the trust accrued no later than December 31, 2008 which means that the four year statute of limitations expired on December 31, 2012, nearly six months before Plaintiff filed the instant lawsuit.  See (**Doc. No. 1-1**), Plaintiff's First Amended Complaint, Exhibit A to Notice of Removal, ¶21.    Based upon the allegations in the Complaint, Defendants have demonstrated that by 2008, Mr. Lederhos had "acquire[d] knowledge of facts, conditions, or circumstances which would cause a reasonable person[1] to make an inquiry leading to the discovery of the concealed cause of action." Martinez, 1998–NMCA–111, ¶ 24 (citation omitted).  A reasonable

---

[1]   Plaintiff alleges that her father was elderly and was suffering from dementia at this point.  In spite of these allegations, the Court must apply a reasonable person standard to Mr. Lederhos.  The Court will address these arguments in its discussion of equitable tolling.

person would begin an inquiry into why his investments failed so miserably that he was forced to sell his house and lost most of his savings, especially where one person was making significant financial transactions on his behalf.  Although Mr. Lederhos did not "have knowledge of the full extent of [his] injury", he had "knowledge of sufficient facts to constitute a cause of action." Gerke, 2010-NMCA-060, ¶10.

Although the allegations in the Complaint are sufficient to support a finding that Mr. Lederhos' claim accrued no later than December 31, 2008, the Court also finds Plaintiff's own exhibits compelling.  Among the exhibits attached to Plaintiff's Response is a "Request for Assistance Form" ("form") that was submitted to the California Department of Insurance on June 19, 2008.   See **(Doc. No. 22-2)**, Exhibit B to Plaintiff's Response.   The form lists the complainant as Mr. Lederhos although the narrative portion indicates that Phillip Sweesy, Plaintiff's husband and Mr. Lederhos' son-in-law, filled out the form on Mr. Lederhos' behalf. The narrative portion of the form alleges that "the agent [Ms. Davalos] methodically defrauded [Mr. Lederhos] of over $600,000 beginning in 2001." Id.   The form also indicated that Sun Life was involved in Mr. Lederhos' complaint.  Because Plaintiff submitted this form, she clearly does not dispute its validity or accuracy and as noted above, the Court may properly consider the form because it is a matter of public record.[2]   The form demonstrates that as early as June 19, 2008, Mr. Lederhos had enough facts concerning Ms. Davalos' alleged fraud that he actually began an inquiry into her actions.  Further, Mr. Lederhos was on notice that Defendant Sun Life was somehow involved in Ms. Davalos' fraud.   The form demonstrates that the statute of

---

[2]   The Court is considering the form simply for the fact that Mr. Lederhos made these allegations in June 2008; it is not considering the form for the truth of the matters asserted therein.  See Tal, 453 F.3d 1265, n. 24  (noting that when considering documents that are a matter of public record on a motion to dismiss, "the documents may only be considered to show their contents, not to prove the truth of matters asserted therein.").

limitations deadline should be June 19, 2012, nearly a year before Plaintiff filed her Complaint. Thus, the Court finds that Plaintiff's Complaint as well as the form, which is a matter of public record, demonstrates that her claims are barred by the statute of limitations.

> B.    *Equitable Tolling*

Because Plaintiff's Response to Defendants' Motion focused exclusively on her own knowledge, not her father's, Plaintiff did not argue that any equitable tolling was available regarding the statute of limitations based upon her father's circumstances.  Plaintiff did request equitable tolling based upon her own circumstances, however, as discussed previously, Plaintiff's personal knowledge of the injury is irrelevant, as are her arguments for tolling based upon her own personal circumstances. Defendant's Motion, however, anticipated an equitable tolling argument by Plaintiff and thus, presented two separate equitable tolling statutes that may be applicable to Mr. Lederhos and demonstrated why neither of the tolling statutes saved Plaintiff's claim.  Although Plaintiff has not advanced these arguments, the Court will consider, out of an abundance of caution, whether equitable tolling applies to the claims.

There are two tolling statutes that may apply to Mr. Lederhos.  The first is NMSA 1978 § 37-1-10 which provides "[t]he times limited for the bringing of actions by the preceding provisions of this chapter shall, in favor of minors and incapacitated persons, be extended so that they shall have one year from and after the termination of such incapacity within which to commence said actions."  The applicable statute of limitations begins to run against incapacitated persons, as with any other potential plaintiff, when the cause of action accrues.  Slade v. Slade, 81 N.M. 462, 466, 468 P.2d 627, 631 (1970).   "It is quite clear from a plain reading of Section 37–1–10 that, when [the applicable statute of limitations] runs its full course [while a plaintiff is incapacitated], Section 37–1–10 gives the [incapacitated plaintiff] a year [after the end of his or

her incapacitation] within which to sue." Gomez v. Chavarria, 2009-NMCA-035, ¶ 7, 146 N.M. 46, 49, 206 P.3d 157, 160. If the statute of limitations has not expired by the time a plaintiff's incapacitation ends, the plaintiff either gets the full length of the statute of limitations from the date of accrual of the cause of action or a year after the end of the incapacitation, whichever is longer. See id., at ¶ 7 (rejecting Plaintiff's argument that those eligible for the tolling provision in Section 37-1-10 get the standard statute of limitations plus one year after the end of their minority or incapacity). Here, Mr. Lederhos was arguably incapacitated as a result of his dementia caused by Alzheimer's. His incapacitation ended upon his death in 2009. Thus, pursuant to NMSA 1978 § 37-1-10 the statute of limitations would have been extended to July 30, 2010. Because the statute of limitations had not expired prior to the end of Mr. Lederhos' incapacitation, Mr. Lederhos would get either a year from the end of his incapacitation or the standard statute of limitations period, in this case the standard statute of limitations period, because it gave Mr. Lederhos a longer amount of time in which to file a claim.

New Mexico also provides a specific tolling statute where the claimant dies before the applicable statute of limitations has run. See NMSA 1978 § 37-1-11 ("If the person entitled to a cause of action die [sic] within one year next previous to the expiration of the limitation above provided, the representatives of such persons shall have one year after such death within which to commence said action."). Again, this tolling statute only extends the period in which Plaintiff had to file her cause of action to a year after Mr. Lederhos' death. Neither of the equitable tolling doctrines arguably applicable to Plaintiff's claims extends to May 2013; therefore, Plaintiff's claims are barred by the statute of limitations even if the Court applies the equitable tolling doctrines.[3]

---

[3] Because Plaintiff's claims are barred by the statute of limitations, the Court need not address Defendant Sun Life's argument that Plaintiff's Complaint fails to state a claim.

**THEREFORE, IT IS ORDERED**, that Defendant Sun Life's Motion to Dismiss (**Doc. No. 11**) is **GRANTED** and all of Plaintiff's claims against Defendant Sun Life are dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE